## National CSS, Inc. *v.* City of Stamford
## (12226)

Peters, C. J., Healey, Shea, Dannehy and Santaniello, Js.

Argued November 8, 1984—decision released April 2, 1985

*Joram Hirsch,* with whom, on the brief, was *Richard L. Albrecht,* for the appellant (plaintiff).

*Alice L. Perry,* assistant corporation counsel, for the appellee (defendant).

Santaniello, J. In this case the plaintiff, National CSS, Inc., seeks a refund of personal property taxes that it paid to the defendant, the city of Stamford, on certain leased computer equipment. The trial court, *Meadow, J.,* sustained the defendant's denial of the plaintiff's application for a refund of the overpayment.

On appeal, the plaintiff contends the trial court erred (1) in concluding that its claim for a refund under General Statutes § 12-60 was time-barred by the one year statute of limitations contained in § 12-57, and (2) in failing to find that it was entitled to a refund under the common law principle of unjust enrichment.

The trial court could reasonably have found the following facts. The Itel Memory Equipment Corporation (Itel), located in San Francisco, California, leased computer equipment valued at $916,072 to the plaintiff, National CSS, Inc., a Stamford based corporation, in accordance with the terms of a written lease agreement. During the years in which the disputed taxes were paid, the equipment was located in Stamford. The agreement specifically required Itel to pay all local property taxes levied on the equipment.[1] In September, 1973, and October, 1974, the plaintiff and Itel, as required by statute, filed property lists with the defendant city of Stamford's tax assessor. Both corporations claimed the computer equipment as taxable personal property.

As a general rule, the Stamford tax assessor does not individually check each item of property listed on these returns to determine actual taxpayer ownership, but instead assumes that a taxpayer provides information only on the property it owns. Because Itel and the plaintiff had each placed the leased computer equipment on their individual lists in 1973 and 1974, and the assessor did not separately verify ownership of the property, the assessor accordingly billed both corpo-

---

[1] The lease clause read as follows:

#### "ITEL PAYS PROPERTY TAX RIDER

Notwithstanding the provisions of Section 2, 'Rental Charges,' of the Lease Agreement, accrued property taxes, however designated, on the machines shall be paid by ITEL."

rations for the single property tax amount accrued on the equipment. Itel and the plaintiff duly paid these taxes.

Evidence presented to the trial court showed that the plaintiff paid taxes on the equipment in the amount of $28,092.26 in 1973 and $25,871.71 in 1974.[2] Although the evidence did not reveal the exact date of the plaintiff's tax payments, the trial court presumed that payment had been made before the statutory deadlines of July 1, 1974, and July 1, 1975. Itel also paid property taxes on the computer equipment, on July 25, 1974, and August 1, 1975.[3] It is undisputed that Itel at all times completely fulfilled its contract obligation to pay property taxes accrued on the computer equipment, and Itel's position as lessor/taxpayer is not an issue in the dispute before us.

Sometime after the plaintiff paid its 1974 taxes it became aware that, under the lease agreement, it was not obligated to pay property taxes on the computer equipment. On September 16, 1976, pursuant to the provisions of General Statutes (Rev. to 1975) § 12-129,[4]

---

[2] The difference in the amount of taxes paid in 1973 and 1974 was caused by a depreciation in the value of the computers.

[3] Although the taxes assessed against Itel were identical to those assessed against and paid by the plaintiff, Itel in fact paid only approximately $10,000 in property taxes on the equipment. This was due to the application of a tax relief formula available to out-of-state corporations that are required to pay property taxes in both their home state and the state in which leased property is located.

[4] "[General Statutes (Rev. to 1975)] Sec. 12-129. REFUND OF EXCESS PAYMENTS. Any person, firm or corporation who pays any property tax in excess of the principal of such tax as entered in the rate book of the tax collector and covered by his warrant therein, or in excess of the legal interest, penalty or fees pertaining to such tax, or who pays a tax from which the payor is by statute exempt and entitled to an abatement, or who, by reason of a clerical error on the part of the assessors, tax collector or any other town officer, pays a tax in excess of that which should have been assessed against his property, or who is entitled to a refund because of the issuance of a certificate of correction, may make application in writing to the collector of taxes for the refund of such amount. Such application shall be made within

the plaintiff made a written demand upon the defendant for reimbursement of the 1973 and 1974 tax overpayments, in an amount totaling $53,963.97. The defendant refused to grant the refund on the ground that § 12-129 does not authorize refunds of tax overpayments caused by clerical errors of taxpayers, but applies only to overpayments caused by clerical errors of assessors.

The plaintiff then commenced the underlying action in Superior Court. During a hearing before the trial court, and upon close examination of the facts of the case, it apparently became clear to the judge and to the parties that the dispute could be more appropriately resolved under General Statutes (Rev. to 1975) § 12-60 rather than under § 12-129.[5] The case therefore continued from that point, without objection by either party, as though it had been originally pleaded

six years from the date of payment and shall contain a recital of the facts and shall state the amount of the refund requested. The collector shall, after examination of such application, refer the same, with his recommendations thereon, to the board of selectmen in a town or to the corresponding authority in any other municipality, and shall certify to the amount of refund, if any, to which the applicant is entitled. Upon receipt of such application and certification, the selectmen or such other authority shall draw an order upon the treasurer in favor of such applicant for the amount of refund so certified. Any action taken by such selectmen or such other authority shall be a matter of record, and the tax collector shall be notified in writing of such action. Upon receipt of notice of such action, the collector shall make in his rate book a notation which will date, describe and identify each such transaction. Each tax collector shall, at the end of each fiscal year, prepare a statement showing the amount of each such refund, to whom made and the reason therefor. Such statement shall be published in the annual report of the municipality or filed in the town clerk's office within sixty days of the end of the fiscal year. Nothing in this section shall be construed to allow a refund based upon an error of judgment by the assessors, nor a refund as to which the procedure has, prior to October 1, 1943, been determined by statute."

[5] "[General Statutes (Rev. to 1975)] Sec. 12-60. CORRECTION OF CLERICAL ERROR IN ASSESSMENT. Any clerical omission or mistake in the assessment of taxes may be at any time corrected according to the fact by the assessors or board of tax review, and the tax shall be levied and collected according to such corrected assessment."

under § 12-60.[6] The trial court, in its memorandum of decision, determined that the plaintiff could not obtain a refund under § 12-60 without first being issued a certificate of correction in accordance with the provisions of General Statutes (Rev. to 1975) § 12-57.[7] It found that because the plaintiff had failed to file its claim,

[6] The defendant raises the issue that the plaintiff should be precluded from arguing the applicability of General Statutes § 12-60 because the plaintiff pleaded its complaint pursuant to § 12-129, and never amended it to include a § 12-60 cause of action. We find this claim to be without merit.

Throughout the trial court proceedings the defendant treated the case as though it had been pleaded under § 12-60. At no time prior to this appeal did the defendant object to the plaintiff's or the court's characterization of the case as a § 12-60 cause of action, and the defendant, in fact, appears to have assented to it by raising numerous contentions regarding § 12-60 at trial. "This court has repeatedly indicated its disfavor with the failure of a party . . . to object to claimed errors occurring in the course of a trial until it is too late for them to be corrected, and thereafter . . . to . . . [raise] such errors . . . [on] appeal." *Balch Pontiac-Buick, Inc.* v. *Commissioner of Motor Vehicles,* 165 Conn. 559, 568, 345 A.2d 520 (1973); see *State* v. *Grimes,* 154 Conn. 314, 323, 228 A.2d 141 (1966). We will therefore treat this case, as did the trial court, as though "the present action was brought pursuant to § 12-60."

[7] "[General Statutes (Rev. to 1975)] Sec. 12-57. LISTING OF TANGIBLE PERSONAL PROPERTY; CERTIFICATES OF CORRECTION. The assessors of any municipality shall, at any time prior to the payment of the tax represented thereby, or within one year subsequent to the date the tax was paid, issue a certificate of correction removing tangible personal property from the list of any person, when such tangible personal property was not taxable on such list in the name of such person by such municipality, and shall, in case such tangible personal property was subject to taxation on the same grand list by such municipality in the name of some other person and was not so previously assessed in the name of such other person, add such tangible personal property to the list of such other person and, in such event, the tax shall be levied upon, and collected from, such other person. When it has been determined by the assessors of a municipality, at any time prior to or within one year subsequent to the payment of the tax, that tangible personal property has been assessed when it should not have been, the assessors shall issue a certificate of correction removing such tangible personal property from the list of the person who was assessed in error and, if such tangible personal property should have been subject to taxation for the same taxing period on the grand list of another municipality in this state, the assessors shall promptly notify, in writing, the assessors of the municipality where the tangible personal property should be properly assessed and taxed, and the assessors of such municipality shall assess such tangible per-

and thereby obtain the certificate, within the one year statute of limitations prescribed by § 12-57, it was not entitled under § 12-60 to reimbursement for the tax overpayment.

The plaintiff raises as its first claim of error the trial court's conclusion that the statute of limitations contained in § 12-57 bars the plaintiff from obtaining a refund under § 12-60.[8] The plaintiff argues that the court erred in imputing the § 12-57 limitation period into § 12-60, because § 12-60 specifically permits errors in the payment of taxes to be corrected "at any time." The plaintiff further urges that if its claims are considered solely under the provisions of § 12-60, it will be entitled to a refund of the overpaid taxes. We agree with the plaintiff's contention only insofar as we find that the trial court erred in imputing the § 12-57 limitation period into § 12-60, and that the plaintiff's claim for a refund should be analyzed pursuant to § 12-60. It is our view, however, that the provisions of § 12-60 do not authorize payment of a tax refund in the circumstances presented by this case.

Section 12-60 provides that "[a]ny clerical omission or mistake in the assessment of taxes may be at any

---

sonal property and shall thereupon issue a certificate of correction adding such tangible personal property to the list of the person owning such property, and the tax thereon shall be levied and collected by the tax collector. Each such certificate of correction shall be made in duplicate, one copy of which shall be filed with the tax collector of such municipality and the other kept by the assessors as a permanent record."

[8] The plaintiff claimed below and continues to argue here that since the defendant failed affirmatively to plead the statute of limitations; General Statutes § 12-57; prior to raising it at trial, it is precluded from raising it as a defense either at trial or on appeal. Ordinarily a party planning to raise the statute of limitations to bar an opposing claim must raise it prior to trial as a special defense. It was not necessary, however, for the defendant in this case to do so, since here the statute limits the time within which an assessor must issue a certificate of correction, and not the time within which a taxpayer must actually file suit. The affirmative duty is imposed on the assessor and not on the parties, and there is thus no need affirmatively to plead the limitation period.

time corrected according to the fact by the assessors or board of tax review, and the tax shall be levied and collected according to such corrected assessment." In its memorandum of decision the trial court found that since § 12-60 does not specifically "restrict the corrections to mistakes made by assessors, tax collectors, or other Town officers . . . clerical errors on the part of the taxpayer should be correctable." The court further determined that the "plaintiff's error in listing the computer on its 1973 and 1974 returns is a clerical mistake within the meaning of C.G.S. Sec. 12-60," and that the assessor therefore had the "statutory authority to correct a mistake 'according to the fact' at any time." The plaintiff's petition for a refund of its tax overpayment was ultimately barred, however, by the court's application of § 12-57, which provides in part that "[t]he assessors of any municipality shall, at any time prior to the payment of the tax . . . *or within one year subsequent to the date the tax was paid,* issue a certificate of correction removing tangible personal property from the list of any person, when such tangible personal property was not taxable on such list in the name of such person by such municipality . . . ." (Emphasis added.) The trial court found that the plaintiff could obtain the relief it sought under § 12-60 only by the issuance of a § 12-57 certificate of correction, and that since the plaintiff had not applied for the certificate within one year from the date it paid its taxes, it was barred from recovering any of the overpayment. The trial court found that § 12-60 could operate only in conjunction with § 12-57 because the issuance of a certificate of correction under § 12-57 was a mandatory prerequisite to obtaining a refund by § 12-60. Our analysis of these statutes, however, has uncovered no evidence supporting this construction.

The duties of tax assessors are prescribed with particularity by Chapter 203 of the General Statutes. "The

power of assessors to alter assessments exists only during the lawful period for the performance of their duties, before the [municipal grand] lists are completed and filed." *Empire Estates, Inc.* v. *Stamford,* 147 Conn. 262, 264, 159 A.2d 812 (1960). Before the broad authority conferred on them by the statutes is exhausted, assessors have "abundant power to correct omissions or mistakes, clerical or otherwise, independently of [§ 12-60]." *Bridgeport Brass Co.* v. *Drew,* 102 Conn. 206, 210, 128 A.2d 413 (1925). Once assessors have completed their duties as prescribed by statute, however, they have "no authority to alter a list except to remedy a clerical omission or mistake." (Citations omitted.) *Empire Estates, Inc.* v. *Stamford,* supra, 264–65. "Evidently the purpose of [§ 12-60] was to give to 'assessors or board of relief' a limited continuing authority to correct . . . 'clerical' omission[s] or mistake[s] . . . irrespective of whether their larger jurisdiction had been terminated." *Bridgeport Brass Co.* v. *Drew,* supra, 211. The trial court's conclusion that § 12-60 operates only in conjunction with § 12-57, and that a § 12-60 cause of action therefore terminates after one year, is against the weight of case law, and frustrates the very purpose for which § 12-60 was enacted. See *Evening Sentinel* v. *National Organization for Women,* 168 Conn. 26, 31, 357 A.2d 498 (1975).

The legislature, in creating the municipal taxation scheme, placed precise statutes of limitations over most substantive taxpayer claims. See, e.g., General Statutes §§ 12-57, 12-112, 12-119. It specifically chose not so to restrict claims arising from "clerical omission[s] or mistake[s] in the assessment of taxes" by allowing such actions to be brought "at any time." General Statutes § 12-60. While the phrase "at any time" ordinarily would be construed as placing no unreasonable limits on the time such a correction can be made; *West Haven* v. *Aimes,* 4 Conn. Sup. 391, 393–94 (1937); we note that

General Statutes § 12-129 in fact places a six year restriction on refunds under § 12-60.[9] We can find no evidence that the legislature intended the clause to be qualified by the one year statute of limitations imposed by § 12-57. Where the legislature has seen fit not to insert a time limitation into a statute, this court will not undermine legislative intent by imputing such a limitation period. We note, as further support for our conclusion, that if we were to impute into § 12-60 the § 12-57 statute of limitations, § 12-60 would essentially be superseded by § 12-57 because both statutes would then be available to correct similar, clerical type errors, for an equivalent period of time. We doubt that the legislature, in enacting § 12-57, intended such a result. See *Evening Sentinel* v. *National Organization for Women,* supra, 31; see also *Frazier* v. *Manson,* 176 Conn. 638, 644, 410 A.2d 475 (1979). This court will therefore construe these statutes in a way that favors preserving the integrity and effectiveness of both. Such a construction requires that claims under § 12-60 be analyzed independently of § 12-57. The question before us thus becomes whether the plaintiff can recover solely under the provisions of § 12-60.

Section 12-60 provides a remedy for "any clerical omission or mistake in the assessment of taxes . . . ."

---

[9] General Statutes § 12-129 provides in relevant part: "REFUND OF EXCESS PAYMENTS. Any person, firm or corporation who . . . by reason of a clerical error on the part of the assessors, tax collector or any other town officer, pays a tax in excess of that which should have been assessed against his property . . . may make application in writing to the collector of taxes for the refund of such amount. Such application shall be made within six years from the date of payment . . . ."

Section 12-60, which allows refunds for clerical errors "in the assessment of taxes," is generally applicable to errors similar to those that § 12-129 is designed to remedy. A claim under § 12-60 is therefore subject to the § 12-129 six year statute of limitations.

We note that our imputation of this six year restriction into § 12-60 does not act to bar the plaintiff's claim, since the plaintiff filed for a refund well within the six year limitation period.

In order to recover under this statute it must therefore be shown that a mistake is "clerical" and was made "in the assessment of taxes." We find that the error that occurred here possesses neither of these characteristics.

The trial court found that the "plaintiff's error in listing the computer on its 1973 and 1974 returns is a clerical mistake within the meaning of C.G.S. Sec. 12-60." We do not agree. Clerical errors are of a character different from errors of substance, of judgment, or of law. *Reconstruction Finance Corporation* v. *Naugatuck,* 136 Conn. 29, 32, 68 A.2d 161 (1949). Where an error is of a deliberate nature such that the party making it at the time actually intended the result that occurred, it cannot be said to be clerical. See *Kuhlemeier* v. *County of Los Angeles,* 2 Cal. 2d 257, 261, 40 P.2d 828 (1935).

The plaintiff, at the time it listed the leased computer equipment on its tax return and paid the disputed taxes, operated under the mistaken belief that it actually owed taxes on the equipment to the defendant. Because the plaintiff's action in listing the property and paying the taxes, although mistaken, was deliberate and intentional, it is not clerical, but can only be characterized as an error of substance.

Nor can we say that the error here occurred "in the assessment of taxes." General Statutes § 12-60. " ' "Assessment is the listing and valuation of property liable to taxation according to law. . . . [A]n assessment can only be made by the officer designated by law to make it." ' " *Northwestern Improvement Co.* v. *Henneford,* 184 Wash. 502, 508, 51 P.2d 1083 (1935). The plaintiff, by listing property on its return, was not assessing its property, but was merely informing the taxing authorities that the property was available for taxation. The property did not become legally subject to taxation, or assessed, until the assessor placed it on

the defendant's final grand list. The plaintiff's claim of statutory entitlement to a refund under § 12-60 must therefore fail.

The plaintiff's second claim of error concerns the applicability of the common law principle of unjust enrichment to taxpayer refund actions. The right of recovery for unjust enrichment is equitable, "its basis being that in a given situation it is contrary to equity and good conscience for the defendant to retain a benefit which has come to him at the expense of the plaintiff." *Schleicher* v. *Schleicher,* 120 Conn. 528, 534, 182 A.2d. 162 (1935). Where, however, a statutory scheme exists for the recovery of a benefit that is also recoverable at common law, the common law right may be resorted to only where the statutory procedures are inadequate. Cf. *State* v. *Salafia,* 29 Conn. Sup. 305, 313, 284 A.2d 576 (1971).

In the present case, the procedure available was more than sufficient in providing the plaintiff a method by which a refund could be obtained.[10] The plaintiff simply failed to take advantage of this statutory remedy in a timely manner, and now seeks to circumvent the state taxation scheme by way of the common law. The plaintiff's failure to show that the existing remedy could not in itself have afforded the plaintiff a refund, however, precludes it from now resorting to the common law.

Public policy requires, furthermore, that this court not permit taxes collected or paid to be the subject of perpetual litigation, at any time, to suit the convenience

---

[10] The only procedure by which the plaintiff in this case could have obtained a refund was to apply for a certificate of correction pursuant to General Statutes § 12-57 within one year from the date its taxes were paid, and use the certificate to obtain a refund under § 12-129 within six years from the date of the tax payment. As previously noted, the plaintiff was unable to avail itself of this statutory procedure because it failed to file for a certificate within one year.

of the taxpayer. See *Matter of Hermance,* 71 N.Y. 481, 488 (1877). A taxpayer who has not sought redress in an appropriate manner is foreclosed from continuing litigation outside these statutes.

There is no error.

In this opinion the other judges concurred.