# Richmond

## Commonwealth of Virginia v. Richmond-Petersburg Bus Lines, Inc.

October 14, 1963.

Record No. 5636.

Present, All the Justices.

The opinion states the case.

*A. R. Woodroof*, Assistant Attorney General (*Robert Y. Button*, Attorney General, on brief), for the appellant.

*E. Ballard Baker* (*Wicker, Baker & Goddin*, on brief), for the appellee.

Eggleston, C. J., delivered the opinion of the court.

Richmond-Petersburg Bus Lines, Inc., filed with the State Corporation Commission an application for a refund of $5,881.17 in gross

receipts taxes which, it alleged, had been erroneously assessed against and paid by it for the period from June 1, 1959 through March 31, 1962. At the hearing it was undisputed that the full amount of the taxes had been erroneously assessed against and paid by the applicant. Since $2,496.32 had been paid within one year of the date of the filing of the application, the Commission unanimously ordered an immediate refund of that amount under Code, §§ 58-1122 and 58-1125. These sections require that such an application be filed within that period. No question has been raised as to this disposition of that portion of the applicant's claim.

As to the balance of $3,384.85, which had been paid more than one year prior to the date of the filing of the application, the majority opinion of the Commission, with Commissioner Catterall dissenting, held that the applicant was entitled to a refund under the terms of Code, § 58-1127, because, it said, the erroneous assessment and collection of these taxes had resulted directly from a "clerical error" on the part of the Commission within the meaning of that section. From an order to this effect the Commonwealth has appealed.

The facts are undisputed. On June 1, 1959, Richmond-Petersburg Bus Lines, Inc., began the operation of a suburban common-carrier passenger service between the cities of Richmond and Petersburg. Shortly thereafter the carrier received from the Commission a communication which read as follows:

"TO THE MOTOR CARRIER ADDRESSED

"Our records indicate that you have registered with this Commission certain motor vehicles to operate for compensation. In view of this, you are subject to the provisions of the 2% Gross Receipts Road Tax Law.

"We are enclosing herewith a report form, which has on the back an explanation of the Law and instructions for making reports. Future forms will be mailed you at the end of each quarterly period in ample time for filing.

"DIVISION OF MOTOR CARRIER TAXATION
"STATE CORPORATION COMMISSION"

Enclosed in that letter was a report form to be used by the carrier in making the first quarterly report of its gross receipts. On the back of the form was printed this statement:

## "Urban Bus Systems

"The tax is not imposed on receipts derived by urban bus systems from transporting passengers from a point within a city or town to another point within the same city or town."

Thereafter the forms sent by the Division of Motor Carrier Taxation to the carrier between June 1, 1959 and March 31, 1961, contained the same statement with respect to the exemption from taxation of gross receipts derived from the operation of urban bus systems.

This information with respect to the carrier's then liability for such tax was erroneous in that it was based on the provisions of Code, § 58-643, as amended by Acts 1954, ch. 189, p. 179, which exempted from such tax the "gross receipts of an urban bus system derived from transporting passengers from a point within a city or town to another point within the same city or town." As amended by the Acts of 1958, ch. 313, p. 363, the exemption was enlarged. The section then provided that gross receipts taxes shall not apply to "urban and suburban bus lines," which were defined "as bus lines the majority of whose passengers use the buses for travelling a distance of not exceeding forty miles, measured one way, on the same day between their places of abode and their places of work, shopping areas, or schools."

It is conceded that during the entire period from 1959 to 1962, inclusive, for which these taxes were assessed, the applicant-carrier had been operating such an urban and suburban bus line and was thus exempt from this gross receipts tax under the 1958 amendment to § 58-643.

The mistake in sending this carrier the improper information and form was explained by Albert Stuart, Jr., Director of the Commission's Division of Motor Taxation. He said that shortly after the effective date of the 1958 amendment, exempting urban and suburban bus lines from the payment of gross receipts taxes, the Division revised its instructions and report forms so as to inform the carriers of changes in the law. However, until March, 1961, it continued to send this carrier the old forms and instructions for reporting gross receipts taxes.

Upon receipt of these forms the president of the carrier directed its bookkeeper to fill them out and pay the taxes as therein required.

Beginning in March, 1961, the Commission sent proper forms to the carrier which correctly advised it that "urban and suburban bus

lines" were not subject to the gross receipts tax. However, this carrier continued to report on these forms its gross receipts, was assessed by the Commission with taxes thereon, and paid them.

Stuart further testified that, "It was an error for us to mail him the forms without proper instructions." He attributed the error to the addressograph section of his division. This testimony, the majority opinion of the Commission held, "establishes conclusively that the Commission's staff made an error when it sent to the applicant forms and instructions which were erroneous." Moreover, the majority opinion found that "The applicant was actually induced by a clerical error of the Commission's staff to file a return and pay taxes which it did not owe" and that such error "was the sole and only reason why the applicant was assessed with and required to pay" them. Consequently, it said that "the Commission is of the opinion and finds that these taxes were levied and assessed by reason of a clerical error within the meaning of Section 58-1127 of the Code" and that the applicant was entitled to a refund under the provisions of that statute.

In his dissent, while Commissioner Catterall agreed that the taxes here in dispute were erroneously assessed and paid, he took the view that the mistake of the employees of the Commission in sending the carrier the wrong form carrying incorrect information as to its tax liability was not a "mere clerical error" as that term is used in § 58-1127, and that hence the carrier was not entitled to a refund under the provisions of that section. Such is the gist of the Commonwealth's contention on this appeal.

It is true, as the Attorney General points out, that "The right to apply for the correction of an assessment and for a refund is purely a statutory right and it is incumbent upon one seeking relief to proceed according to the statute affording such relief. * * * The application must be made within the time required by the authorizing statute and in accordance with such restrictions or conditions as may be contained therein." *Commonwealth* v. *Cross*, 196 Va. 375, 378, 83 S. E. 2d 722, 725.

But, as we have frequently said, such statutes are remedial in character and must be given a liberal construction with the view of advancing the remedy sought to be applied in compliance with the true intent and purpose of the legislature. *Commonwealth* v. *Cross*, *supra*. 196 Va., at page 379, 83 S. E. 2d, at page 725, and cases there collected.

Code, § 58-1127, reads as follows:

"*Correction of mere clerical errors.*—Notwithstanding the foregoing provisions the State Corporation Commission shall have the authority, upon formal or informal application, or of its own motion, to correct assessments or certify to the Comptroller directing refund in any case in which there has been an erroneous assessment or erroneous payment involving or resulting from mere clerical error on the part of the State Corporation Commission in making such assessment or other charge, provided such clerical error has not been induced by misinformation or neglect on the part of the applicant for correction of assessment or charge or for refund of an erroneous or excessive payment resulting from any such mere clerical error. Such authority on the part of the State Corporation Commission to correct such mere clerical errors on its part and all refunds resulting from such mere clerical errors on its part shall not be subject to the requirements as to the procedure hereinbefore provided nor to limitation as to time of making application for any such correction or refund. The authority hereby given to correct mere clerical errors and to order refunds resulting from mere clerical errors on the part of the Commission shall apply to cases which have already arisen as well as to such cases as shall arise in the future."

It will be observed that the statute is in broad language. It provides that notwithstanding the provisions with respect to procedure and the limitation as to the time for making an application for a correction or refund, as required by the preceding sections, the Commission is authorized "upon formal or informal application, or of its own motion," to correct assessments or direct a refund in any case in which there has been "an erroneous assessment or erroneous payment involving or resulting from mere clerical error on the part of the State Corporation Commission in making such assessment." The authority of the Commission is to "apply to cases which have already arisen as well as to such cases as shall arise in the future."

It is thus clear that the statute is highly remedial and designed to afford prompt relief, in an informal manner, to the taxpayer affected. The only limitation on the authority of the Commission is in the proviso that "such clerical error has not been induced by misinformation or neglect on the part of the applicant."

In the present case there is no contention that the error of the Commission was induced by misinformation or neglect on the part of the applicant.

As has been said, the Commission found that this erroneous assess-

ment and erroneous payment resulted directly from the mistake of a member of its staff in sending to the applicant-carrier the erroneous information which induced it to pay taxes which it did not owe and which the Commission had no right to assess and collect, and that such a mistake was a "mere clerical error" on the part of the State Corporation Commission within the meaning of the statute. We agree that the record supports this finding and that the conclusion of the majority opinion based thereon is correct.

It is true, as the Attorney General argues, that a "clerical error" often denotes "an error made in copying or writing." But the term frequently has a broader meaning according to the context in which it is used and the purpose for which it is employed. Construing the words literally, a "clerical error" means an error committed by a clerk or some subordinate agent in the performance of clerical work. 14 C. J. S., Clerical Work, p. 1203; *Davis* v. *Rudolph*, 80 Cal. App. 2d 397, 181 P. 2d 765, 773; *State* v. *F. B. Williams Cypress Co.*, 132 La. 949, 61 So. 988, 994, Ann. Cas. 1914D 1290; *Stephenson* v. *Ashburn*, 137 W. Va. 141, 70 S. E. 2d 585, 588. It usually denotes negligence or carelessness which is not attributable to the exercise of judicial consideration or discretion. *Morimura Bros* v. *United States*, 2d Cir., 160 F. 280, 281; *Wilson* v. *Wilson*, 109 Cal. App. 2d 673, 241 P. 2d 281, 282.

In *Keller* v. *Cleaver*, 20 Cal. App. 2d 364, 67 P. 2d 131, 133, it was held that the failure of a clerk to enter a proper order carrying out the court's decision was a clerical error. Similarly, in *New England Furniture & Carpet Co.* v. *Willcuts*, D.C. Minn., 55 F. 2d 983, 987, it was held that the mistake of a clerk in prematurely placing a case on the calendar was a clerical error.

In the present case it appears that the mistake by which the carrier-applicant was furnished the forms containing the erroneous information was made by a subordinate or clerk in the Commission's Division of Motor Carrier Taxation in the performance of his clerical duties.

In view of the remedial character of the statute and the liberal construction which should be applied to it, we agree with the majority opinion of the Commission that such mistake of a member of the Commission's staff was a "mere clerical error" and that the carrier-applicant is entitled to a refund of the taxes which had been improperly assessed against and collected from it.

Accordingly, the order is

*Affirmed.*