# WILTON CAMPUS 1691, LLC *v.* TOWN OF WILTON

## WILTON RIVER PARK 1688, LLC
## *v.* TOWN OF WILTON

## WILTON RIVER PARK NORTH, LLC
## *v.* TOWN OF WILTON
## (SC 20388)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn, Ecker and Keller, Js.

*Syllabus*

Pursuant to statute (§ 12-55 (b)), an assessor, "[p]rior to taking and subscrib-
ing to the oath upon the grand list . . . shall equalize the assessments
of the property in the town . . . and make any assessment omitted by
mistake or required by law."

Pursuant further to statute (§ 12-63c (d)), a property owner required to
submit information to an assessor for any assessment year who fails to
submit such information shall be subject to a penalty equal to a 10

Wilton Campus 1691, LLC *v.* Wilton

percent increase in the assessed value of the owner's property for such assessment year.

The plaintiffs, entities that owned commercial properties that operated together as a retail shopping center in the town of Wilton, appealed to the trial court from the decision of the Board of Assessment Appeals of the defendant town. The board had denied the plaintiffs' appeals from the allegedly improper assessment of penalties under § 12-63c (d) by the town assessor as a result of their late submission of certain annual income and expense reports. The trial court rendered judgments for the town, concluding that, although § 12-55 (b) required the assessor to impose the penalties before taking and subscribing to the oath upon the grand list, the only redress for the failure of the assessor to comply with § 12-55 (b) was to postpone the right of the plaintiffs to appeal from the action of the assessor until the succeeding grand list. The plaintiffs appealed to the Appellate Court, which reversed the trial court's judgments. The Appellate Court agreed with the trial court that § 12-55 (b) required the assessor to impose penalties under § 12-63c (d) before signing the grand list but concluded that tax penalties imposed without statutory authority are invalid. On the granting of certification, the town appealed to this court, claiming that the assessor was not bound by the requirement in § 12-55 (b) that assessments omitted by mistake or required by law must be made before the assessor signs the grand list for the applicable assessment year. *Held* that the Appellate Court correctly concluded that the assessor improperly imposed the late filing penalties under § 12-63c (d) on the plaintiffs after the assessor took and subscribed to the oath upon the grand list for the assessment year in question:

1. Penalties imposed pursuant to § 12-63c (d) are required by law within the meaning of § 12-55 (b); this court's reading of the language in § 12-63c (d) led it to conclude that the penalty imposed under that statute when a property owner fails to submit required information is mandatory unless one of two exceptions apply, and neither exception applied in the present case because it was undisputed that the plaintiffs owned the subject property at all relevant times and the town had not enacted an ordinance permitting the assessor to waive penalties under § 12-63c (d).

2. The town assessor lacked authority under § 12-55 (b) to impose the late filing penalties after signing the grand list; this court having concluded that the term "assessment" in § 12-55 (b) must be read to include penalties imposed under § 12-63c (d), the assessor was bound by the time limitations in § 12-55 (b) and was required to impose the late filing penalties under § 12-63c (d) prior to taking and subscribing to the oath upon the grand list.

3. The assessor lacked authority to impose the late filing penalties against the plaintiffs under the statute (§ 12-60) applicable to the correction of clerical errors or mistakes, as the assessor's intentional decision to delay

Wilton Campus 1691, LLC *v.* Wilton

imposing the penalties until after he signed the grand list, although mistaken, was not a clerical error but, rather, was an error of substance. (*One justice concurring in part and dissenting in part*)

Argued October 19, 2020—officially released May 26, 2021*

*Procedural History*

Appeals from the decisions of the defendant's Board of Assessment Appeals denying the plaintiffs' appeals from the allegedly improper assessment of tax penalties on certain of the plaintiffs' real property, brought to the Superior Court in the judicial district of Stamford-Norwalk and transferred to the judicial district of New Britain, Tax Session, where the appeals were consolidated and tried to the court, *Hon. Arnold W. Aronson*, judge trial referee, who, exercising the powers of the Superior Court, rendered judgments for the defendant, from which the plaintiffs filed a joint appeal with the Appellate Court, *DiPentima, C. J.*, and *Moll* and *Bishop*, *Js.*, which reversed the judgments of the trial court and remanded the cases with direction to render judgments for the plaintiffs, and the defendant, on the granting of certification, appealed to this court. *Affirmed.*

*Jonathan S. Bowman*, with whom were *Marc J. Herman* and, on the brief, *Barbara M. Schellenberg*, for the appellant (defendant).

*Matthew T. Wax-Krell*, with whom were *Marci Silverman* and, on the brief, *Denise P. Lucchio*, for the appellees (plaintiffs).

*Opinion*

D'AURIA, J. This appeal involves the temporal limits of a municipal assessor's authority to impose penalties on taxpayers. Specifically, we are asked to resolve a dispute over whether the assessor for the defendant, the town of Wilton (town), must impose late filing penal-

* May 26, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

ties on taxpayers pursuant to General Statutes § 12-63c
(d), if at all, before taking and subscribing to the oath
on the grand list for that assessment year pursuant to
General Statutes § 12-55 (b), or may impose the penal-
ties later. The town claims that the Appellate Court
incorrectly concluded that the assessor improperly
imposed late filing penalties on the plaintiffs, Wilton
Campus 1691, LLC, Wilton River Park 1688, LLC, and
Wilton River Park North, LLC, *after* taking and subscrib-
ing to the oath on the grand list for that assessment
year. We disagree and therefore affirm the Appellate
Court's judgment.

The following undisputed facts, as stipulated by the
parties and contained in the record, and procedural
history are relevant to our disposition of this appeal.
The plaintiffs are related entities, each of which at all
relevant times owned commercial properties that oper-
ate together as a retail shopping center located at 5
River Road in Wilton. Pursuant to § 12-63c (a),[1] the
plaintiffs were required to submit annual income and
expense reports for the year 2013 to the assessor on

---

[1] General Statutes § 12-63c (a) provides: "In determining the present true
and actual value in any town of real property used primarily for purposes
of producing rental income, the assessor, which term whenever used in this
section shall include assessor or board of assessors, may require in the
conduct of any appraisal of such property pursuant to the capitalization of
net income method, as provided in section 12-63b, that the owner of such
property annually submit to the assessor not later than the first day of June,
on a form provided by the assessor not later than forty-five days before
said first day of June, the best available information disclosing the actual
rental and rental-related income and operating expenses applicable to such
property. Submission of such information may be required whether or not
the town is conducting a revaluation of all real property pursuant to section
12-62. Upon determination that there is good cause, the assessor may grant
an extension of not more than thirty days to submit such information, if
the owner of such property files a request for an extension with the assessor
not later than May first."

or before June 1, 2014. The plaintiffs failed to submit the reports before the deadline passed. Instead, the plaintiffs sent the reports by overnight mail on June 2, 2014, and the assessor received them on June 3, 2014, two days after the deadline. The parties do not dispute that the late submission of the reports subjected the taxpayers to penalties under § 12-63c (d).[2] Rather, the dispute arose because the assessor signed the 2014 grand list on or before January 31, 2015, without imposing penalties on the plaintiffs. Instead, the assessor delayed imposing the penalties until April 29, 2015, when the assessor issued certificates of change pursuant to General Statutes § 12-60[3] for the properties that

[2] General Statutes § 12-63c (d) provides: "Any owner of such real property required to submit information to the assessor in accordance with subsection (a) of this section for any assessment year, who fails to submit such information as required under said subsection (a) or who submits information in incomplete or false form with intent to defraud, shall be subject to a penalty equal to a ten per cent increase in the assessed value of such property for such assessment year. Notwithstanding the provisions of this subsection, an assessor or board of assessment appeals shall waive such penalty if the owner of the real property required to submit the information is not the owner of such property on the assessment date for the grand list to which such penalty is added. Such assessor or board may waive such penalty upon receipt of such information in any town in which the legislative body adopts an ordinance allowing for such a waiver."

[3] General Statutes § 12-60 provides: "Any clerical omission or mistake in the assessment of taxes may be corrected according to the fact by the assessors or board of assessment appeals, not later than three years following the tax due date relative to which such omission or mistake occurred, and the tax shall be levied and collected according to such corrected assessment. In the event that the issuance of a certificate of correction results in an increase to the assessment list of any person, written notice of such increase shall be sent to such person's last-known address by the assessor or board of assessment appeals within ten days immediately following the date such correction is made. Such notice shall include, with respect to each assessment list corrected, the assessment prior to and after such increase and the reason for such increase. Any person claiming to be aggrieved by the action of the assessor under this section may appeal the doings of the assessor to the board of assessment appeals as otherwise provided in this chapter, provided such appeal shall be extended in time to the next succeeding board of assessment appeals if the meetings of such board for the grand list have passed. Any person intending to so appeal to the board of assessment appeals may indicate that taxes paid by him for any additional assessment added in accordance with this section, during

Wilton Campus 1691, LLC *v.* Wilton

were the subjects of the penalties. It has been the town assessor's long-standing practice to impose § 12-63c (d) penalties retroactively under § 12-60 in order to allow for the correction of clerical omissions or mistakes.

The plaintiffs asserted claims in the trial court, challenging the penalties pursuant to General Statutes § 12-119. They also appealed to the Board of Assessment Appeals of the Town of Wilton (board) pursuant to General Statutes § 12-111. Following a hearing on April 5, 2016, the board denied the plaintiffs' appeals, and the plaintiffs appealed the board's decision to the trial court pursuant to General Statutes § 12-117a. *Wilton Campus 1691*, *LLC* v. *Wilton*, 191 Conn. App. 712, 719–20, 216 A.3d 653 (2019). The trial court consolidated these actions and adjudicated them together.

The trial court agreed with the plaintiffs that, because § 12-55 (b)[4] provides that the assessor, "[p]rior to taking and subscribing to the oath upon the grand list . . . make any assessment . . . required by law," and, because § 12-63c (d) penalties are mandatory, § 12-55 (b) requires the assessor to impose penalties under § 12-63c (d) *before* signing the grand list. Despite so holding, the trial court ruled in favor of the town, concluding that "the only redress for the assessor's failure to comply with the provisions of § 12-55 (b) is to postpone the right of the plaintiffs to appeal the action of the assessor until the succeeding grand list" and that "[t]he penalty

the pendency of such appeal, are paid 'under protest' and thereupon such person shall not be liable for any interest on the taxes based upon such additional assessment, provided (1) such person shall have paid not less than seventy-five per cent of the amount of such taxes within the time specified or (2) the board of assessment appeals reduces valuation or removes items of property from the list of such person so that there is no tax liability related to additional assessment."

[4] General Statutes § 12-55 (b) provides in relevant part: "Prior to taking and subscribing to the oath upon the grand list, the assessor or board of assessors shall equalize the assessments of property in the town, if necessary, and make any assessment omitted by mistake or required by law. . . ."

Wilton Campus 1691, LLC *v.* Wilton

prescribed for in § 12-63c (d) makes no provision for the removal of the 10 [percent] penalty imposed by the legislature, regardless of the action taken by the assessor.'' The trial court therefore rendered judgments in the town's favor.

The plaintiffs appealed to the Appellate Court, which agreed with the trial court that § 12-55 (b) requires the assessor to impose penalties under § 12-63c (d) before signing the grand list. *Wilton Campus 1691*, *LLC* v. *Wilton*, supra, 191 Conn. App. 729–30. The Appellate Court reversed the trial court's judgments in favor of the town, however, holding that tax penalties imposed without statutory authority are invalid. Id., 715, 730.

The town petitioned for certification to appeal to this court, which we granted, limited to the issue of whether § 12-55 (b) limits the assessor's statutory authority to impose § 12-63c (d) penalties to the period before the assessor takes and subscribes to the oath on the grand list for the applicable assessment year.[5] See *Wilton Campus 1691*, *LLC* v. *Wilton*, 333 Conn. 934, 218 A.3d 592 (2019).

The town contends that both the Appellate Court and the trial court incorrectly determined that penalties imposed under § 12-63c (d) fall within the scope of the requirement in § 12-55 (b) that the assessor make all ''assessment[s] omitted by mistake or required by law'' before taking and subscribing to the oath upon the grand list for the applicable assessment year. The town appears instead to argue that ''assessment'' in § 12-55 (b) means ''the present true and actual value'' of prop-

---

[5] The town also sought certification, which we originally did not grant, on the issue of whether § 12-60 grants the assessor the authority to intentionally assess penalties retroactively. We thereafter saw fit to order supplemental briefing on the following issue: ''If the [§] 12-63c (d) penalties were not timely imposed, did the Appellate Court properly conclude that the assessor's failure to timely impose those penalties was not a clerical omission or mistake under . . . [§] 12-60.''

Wilton Campus 1691, LLC *v.* Wilton

erty. As such, a penalty under § 12-63c (d) is not an "assessment omitted by mistake or required by law" within the meaning of § 12-55 (b), and, thus, the assessor is not bound by this deadline but, rather, is subject to no deadline.[6]

The plaintiffs, on the other hand, contend that the Appellate Court properly construed § 12-55 (b) to include the penalties at issue and correctly held that the assessor acted beyond his statutory authority by imposing the penalties after signing the grand list. They argue that the town's proposed construction misconstrues the statutory scheme because subsections (a) and (b) of § 12-55 govern different aspects of municipal taxation— publication of the grand list and the assessor's authority to make assessments, respectively. The plaintiffs also contend that an interpretation of § 12-55 (b) that excludes penalties under § 12-63c (d), thereby imposing no deadline on the imposition of these penalties, is untenable because of property owners' need for certainty regarding how much they owe to the municipality. Additional facts and procedural history will be set forth as required.

I

We begin our analysis with the text of the statutes at issue. Section 12-55 (b) provides in relevant part: "Prior to taking and subscribing to the oath upon the grand list, the assessor or board of assessors shall equalize the assessments of property in the town, if necessary, and make any assessment omitted by mistake or required by law. . . ." Section 12-63c (d) provides in relevant part: "Any owner . . . required to submit information to the assessor . . . who fails to submit such information . . . or who submits information in incomplete or false form with intent to defraud, shall be subject to a penalty equal to a ten per cent increase in

_____

[6] See footnote 4 of this opinion.

Wilton Campus 1691, LLC *v.* Wilton

the assessed value of such property for such assessment year. Notwithstanding the provisions of this subsection, an assessor or board of assessment appeals shall waive such penalty if the owner of the real property required to submit the information is not the owner of such property on the assessment date for the grand list to which such penalty is added. Such assessor or board may waive such penalty upon receipt of such information in any town in which the legislative body adopts an ordinance allowing for such a waiver.''

We review these statutes in accordance with General Statutes § 1-2z and our familiar principles of statutory construction; questions of statutory construction are matters of law subject to plenary review. See, e.g., *Rutter* v. *Janis*, 334 Conn. 722, 730, 224 A.3d 525 (2020); see also *Sena* v. *American Medical Response of Connecticut, Inc.*, 333 Conn. 30, 45–46, 213 A.3d 1110 (2019).

There is no dispute that § 12-55 (b) clearly requires that "any assessment omitted by mistake or required by law" must be imposed before the assessor takes and subscribes to the oath upon the grand list. Our analysis focuses on whether the penalty imposed under § 12-63c (d) is (1) an assessment, and whether it was (2) omitted by mistake or required by law, thereby triggering the deadline contained in § 12-55 (b). We address these two requirements in reverse order.

A

We turn first to whether the § 12-63c (d) penalties in this case were either "omitted by mistake" or "required by law." Neither party appears to dispute that the penalties were "required by law," and we agree. Nevertheless, resolution of the dispute before us requires an understanding of the meaning of the statutes involved, and we therefore must undertake our statutory construction exercise. Because we conclude that the penalties imposed in this case were unambiguously "required by

law," we do not reach the question of whether the penalties were "omitted by mistake."

This court previously has interpreted the phrase "required by law" within § 12-55 (b) in *84 Century Ltd. Partnership* v. *Board of Tax Review*, 207 Conn. 250, 263, 541 A.2d 478 (1988), but the court's interpretation is of limited value in the present case. In *84 Century Ltd. Partnership*, we explained that "[a]ssessing property omitted by mistake is a [commonsense] administrative duty . . . . The same may be said of the added function of making any assessment 'required by law.' If it is required by law, the assessors are required to make it whether or not it is included in this section." Id. Our case law therefore suggests that an assessment "required by law" includes any assessment that the assessor is required to make.

There is no statutory definition of an assessment "required by law" for us to consult. When a statute does not define a term, General Statutes § 1-1 (a) directs us to use the "commonly approved usage" of the words at issue. "[T]echnical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly." General Statutes § 1-1 (a). "We may find evidence of such usage, and technical meaning, in dictionary definitions, as well as by reading the statutory language within the context of the broader legislative scheme." *State* v. *Menditto*, 315 Conn. 861, 866, 110 A.3d 410 (2015).

There is no dictionary definition of the phrase "required by law," so, instead, we must separate its component parts and examine their definitions to gain insight into the meaning of the phrase. Dictionaries in print at the time of the statute's enactment are the most instructive. See *State* v. *Menditto*, supra, 315 Conn. 866. The phrase at issue in this case, "any assessment omitted by mistake or required by law," or the nearly identical phrase,

"other assessments omitted by mistake or required by law," has been included in § 12-55 (b) and its predecessors since 1854. See General Statutes (1854 Rev.) tit. LV, c. 1, § 36. The earliest version of the statute, from 1849, similarly required the assessor to "make any other assessments required by law . . . ." General Statutes (1849 Rev.) tit. LV, c. 1, § 5.

An 1848 dictionary defines "required" as "demanded; needed; necessary." N. Webster, An American Dictionary of the English Language (1848) p. 941. A more recent legal dictionary notes that "[w]hen used in a statute the word 'required' may be equivalent to the word 'commanded;' as where commissioners were by statute not only authorized, but 'required' to levy a yearly tax." Ballentine's Law Dictionary (3d Ed. 1969) p. 1098.

An American Dictionary of the English Language in 1848 defines "law" as "[a] rule, particularly an established or permanent rule, prescribed by the supreme power of a state to its subjects, for regulating their actions, particularly their social actions. Laws are imperative or mandatory, commanding what shall be done; prohibitory, restraining from what is to be forborne; or permissive, declaring what may be done without incurring a penalty." (Emphasis omitted.) N. Webster, supra, p. 651. Black's Law Dictionary defines the word "law" as "[t]he aggregate of legislation, judicial precedents, and accepted legal principles; the body of authoritative grounds of judicial and administrative action . . . ." Black's Law Dictionary (8th Ed. 2004) p. 900.

Construing the phrase "required by law" by examining its individual components may not yield a clear definition of the phrase in all its applications. It does demonstrate clearly, however, that the phrase is commonly understood to include, at the very least, official actions "commanded" by a state statute. In other words,

if the state statute makes it mandatory that the assessor impose the penalty, it is "required by law."

We therefore must determine whether § 12-63c (d) penalties are mandatory, and thus "required by law," within the meaning of § 12-55 (b).[7] The plaintiffs argue that, because § 12-63c (d) provides that a property owner "shall be subject to a penalty" upon late filing, the penalty is mandatory. Of course, use of the word "shall" is not always dispositive of the question of whether a statutory requirement is mandatory or directory. See, e.g., *Doe* v. *West Hartford*, 328 Conn. 172, 184, 177 A.3d 1128 (2018). Nevertheless, "when the legislature opts to use the words shall and may in the same statute, they must then be assumed to have been used with discrimination and a full awareness of the difference in their ordinary meanings . . . ." (Citation omitted; internal quotation marks omitted.) *Meadowbrook Center, Inc.* v. *Buchman*, 328 Conn. 586, 597–98, 181 A.3d 550 (2018).

Indeed, § 12-63c (d) does use both "shall" and "may." First, the statute explains that owners who fail to submit

---

[7] In determining whether a statutory requirement using the word "shall' is mandatory or directory, this court considers a number of factors, including: "(1) whether the statute expressly invalidates actions that fail to comply with its requirements or, in the alternative, whether the statute by its terms imposes a different penalty; (2) whether the requirement is stated in affirmative terms, unaccompanied by negative language; (3) whether the requirement at issue relates to a matter of substance or one of convenience; (4) whether the legislative history, the circumstances surrounding the statute's enactment and amendment, and the full legislative scheme evince an intent to impose a mandatory requirement; (5) whether holding the requirement to be mandatory would result in an unjust windfall for the party seeking to enforce the duty or, in the alternative, whether holding it to be directory would deprive that party of any legal recourse; and (6) whether compliance is reasonably within the control of the party that bears the obligation, or whether the opposing party can stymie such compliance." (Internal quotation marks omitted.) *Doe* v. *West Hartford*, 328 Conn. 172, 185, 177 A.3d 1128 (2018). Because we find it dispositive that the language of the statute evinces a clear legislative intent to impose a mandatory requirement, we do not discuss each factor individually.

Wilton Campus 1691, LLC *v.* Wilton

required information "*shall* be subject to a penalty equal to a ten per cent increase in the assessed value of such property for such assessment year." (Emphasis added.) General Statutes § 12-63c (d). The statute then continues: "Notwithstanding the provisions of this subsection, an assessor or board of assessment appeals *shall* waive such penalty if the owner of the real property required to submit the information is not the owner of such property on the assessment date for the grand list to which such penalty is added." (Emphasis added.) General Statutes § 12-63c (d). Finally, the statute indicates that "[s]uch assessor or board *may* waive such penalty upon receipt of such information in any town in which the legislative body adopts an ordinance allowing for such a waiver." (Emphasis added.) General Statutes § 12-63c (d). Although the use of both "shall" and "may" in § 12-63c (d) is not dispositive, it suggests that the penalty is mandatory.

The mandatory nature of the penalties imposed in this case becomes clearer when these three sentences of § 12-63c (d) are read together, as they must be. The statute lays out the general rule that property owners that miss the filing deadline "shall be subject to a penalty." The two sentences that follow articulate exceptions to this general rule. These exceptions prompt us to "consider the tenet of statutory construction referred to as expressio unius est exclusio alterius, which may be translated as the expression of one thing is the exclusion of another. . . . [When] express exceptions are made, the legal presumption is that the legislature did not intend to save other cases from the operation of the statute." (Internal quotation marks omitted.) *Felician Sisters of St. Francis of Connecticut, Inc.* v. *Historic District Commission*, 284 Conn. 838, 850–51, 937 A.2d 39 (2008). We conclude that the penalty under § 12-63c (d) is mandatory when neither of the statute's two exceptions applies.

In the present case, the first exception does not apply because it is undisputed that the plaintiffs owned the subject property at all relevant times. The second exception also does not apply because the parties have not provided, and we have not found in our own research, any ordinance adopted by the town giving the assessor discretion to waive this penalty. Because neither exception is satisfied in this case, the Wilton assessor does not have discretion to waive § 12-63c (d) penalties, and, therefore, the penalties in this case are "required by law" within the meaning of § 12-55 (b).

B

Having determined that the penalties imposed on the plaintiffs under § 12-63c (d) were "required by law," we must next determine whether the penalties are considered an "assessment" within the meaning of § 12-55 (b).[8] The town appears to argue that these penalties are not assessments because assessments must be defined as only "the present true and actual value" of property. The plaintiffs do not offer a specific definition of assessment; they simply argue that whatever the definition, it includes penalties under § 12-63c (d).

If the penalties are considered an "assessment," as the plaintiffs argue, the assessor is bound by the time limitations in § 12-55 (b) and must impose the penalties prior to taking and subscribing to the oath on the grand list. If the penalties are not an "assessment" within the

---

[8] The Appellate Court did not consider whether the word "assessment" includes penalties imposed under § 12-63c (d) because it stated that "[t]he parties do not dispute that the imposition of the late filing penalties constitutes an 'assessment' for purposes of § 12-55 (b)." *Wilton Campus 1691, LLC* v. *Wilton*, supra, 191 Conn. App. 726. The town argues that it did in fact dispute this point and directs this court to the portions of its brief before the Appellate Court on this issue. The plaintiffs argue that the town failed to preserve the issue for appeal. We agree with the town that it raised this issue before the Appellate Court and that we therefore must consider the question.

Wilton Campus 1691, LLC *v.* Wilton

meaning of § 12-55 (b), as the town argues, there is effectively no deadline for imposing penalties under § 12-63c (d), as the text of § 12-63c (d) contains no date by which the assessor must act.

Although the word "assessment" is perhaps susceptible to multiple interpretations in some contexts, we conclude that only the plaintiffs' interpretation is reasonable in this context. We find the statute's plain language unambiguous and that the § 12-63c (d) penalties in this case are "assessments" within the meaning of § 12-55 (b).

Consistent with the legal principles that govern construction of statutes, we begin our analysis with the statute's plain language to determine whether, when read in context, it is "susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Sena* v. *American Medical Response of Connecticut, Inc.*, supra, 333 Conn. 46. Because the word "assessment" is not statutorily defined and this court never has interpreted its meaning within § 12-55 (b), we again turn to dictionaries for guidance. Dictionaries in print at the time the statute was enacted can be most instructive. See, e.g., *State* v. *Menditto*, supra, 315 Conn. 866.

As discussed in part I A of this opinion, the operative clause in what is now § 12-55 (b)—"any assessment omitted by mistake or required by law"—was first adopted by the legislature in the mid-nineteenth century. A dictionary from the time defines "assessment" as "[a] valuation of property or profits of business, for the purpose of taxation. An assessment is a valuation made by authorized persons according to their discretion, as opposed to a sum certain or determined by law. It is a valuation of the property of those who are to pay the tax, for the purpose of fixing the proportion which each man shall pay; on which valuation the law

imposes a specific sum upon a given amount. . . . A tax or specific sum charged on persons or property.'' (Emphasis omitted.) N. Webster, supra, p. 77. This definition contains no reference to fines or penalties, lending some support to the town's proposed definition. We do not find this definition alone conclusive, however.

Although, as stated previously, dictionaries from the time a statute was enacted are often considered the most persuasive; see *State* v. *Menditto*, supra, 315 Conn. 866; later editions also can be instructive, particularly those from the time when a statute is revised but retains the language at issue. The statute at issue here, § 12-55, which was originally enacted nearly two hundred years ago, has been amended a number of times over the years, most recently in 2003, when it underwent a substantial reconfiguration while retaining the clause at issue. See Public Acts 2003, No. 03-269, § 1. Therefore, we also consider the meaning of the word "assessment" at the time of this revision to understand whether the commonly understood meaning of the word may have evolved since the enactment of the statute. Legal dictionaries near the time of the 2003 revision define the noun "assessment" as both "1. [d]etermination of the rate or amount of something, such as a tax or damages," and "2. [i]mposition of something, such as a *tax or fine*, according to an established rate; the tax or fine so imposed . . . ." (Emphasis added.) Black's Law Dictionary (7th Ed. 1999) p. 111. Significantly, the Black's Law Dictionary definition includes both taxes and fines within the meaning of "assessment." As with the definition of "assessment" contemporaneous with the statute's enactment, this more recent definition also is not conclusive. Rather, it further demonstrates the multiple, ordinary meanings of the word.

Our case law also acknowledges that the word "assessment" is susceptible to multiple definitions and that its meaning in any given statute is context specific.

Wilton Campus 1691, LLC *v.* Wilton

"The word 'assessment,' when used in connection with taxation, may have more than one meaning. The ultimate purpose of an assessment in such a connection is to ascertain the amount that each [taxpayer] is to pay. Sometimes this amount is called an assessment. More commonly the word 'assessment' means the official valuation of a [taxpayer's] property for the purpose of taxation." *State* v. *New York, New Haven & Hartford Railroad Co.*, 60 Conn. 326, 335, 22 A. 765 (1891), overruled in part on other grounds by *Hartford* v. *Faith Center, Inc.*, 196 Conn. 487, 493 A.2d 883 (1985). While acknowledging the multiple definitions of the word, this court never has discussed whether the definition of "assessment" may include fines or penalties.

Because neither dictionary definitions nor our case law conclusively reveals the plain meaning of the word "assessment" in § 12-55 (b), we also consider whether the proffered definitions are consistent with the broader statutory scheme and with our case law interpreting our taxing statutes. See *Nationwide Mutual Ins. Co.* v. *Pasiak*, 327 Conn. 225, 246, 173 A.3d 888 (2017); *State* v. *Menditto*, supra, 315 Conn. 866. Most significantly, the statutory time period for the performance of the assessor's duties is governed by § 12-55 unless another statute expressly extends this period. See *Reconstruction Finance Corp.* v. *Naugatuck*, 136 Conn. 29, 32, 68 A.2d 161 (1949) (explaining that assessors have authority to act only on or before January 31 of each year and citing predecessor of § 12-55, General Statutes (1949 Rev.) tit. XV, c. 86, § 1734). Put another way, the assessor's statutory authority to act generally expires when the assessor takes and subscribes to the oath on the grand list. See General Statutes § 12-55 (b). Our courts consistently have interpreted § 12-55 in this fashion, explaining that "[t]he power of assessors to alter assessments exists only during the lawful period for the performance of their duties, before the lists are

completed and filed. . . . Once the assessors have completed their duties as prescribed by statute, they have no authority to alter a list except to remedy a clerical omission or mistake." (Citation omitted.) *Empire Estates, Inc.* v. *Stamford*, 147 Conn. 262, 264–65, 159 A.2d 812 (1960); see also *National CSS, Inc.* v. *Stamford*, 195 Conn. 587, 594, 489 A.2d 1034 (1985) ("[b]efore the broad authority conferred on them by the [taxing] statutes is exhausted, assessors have abundant power to correct omissions or mistakes, clerical or otherwise, independently of [§ 12-60]" (internal quotation marks omitted)); see *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 432–35, 692 A.2d 742 (1997) (discussing general statutory scheme for taxation of personal property). Thus, our case law makes clear that, although a municipal assessor's powers are abundant during the statutory time period for performance of the assessor's duties, the assessor's authority to act is strictly time bound.

Our taxing statutes, however, do contain several provisions authorizing the assessor to act outside of the period prescribed by § 12-55. See General Statutes § 12-53 (c) (1) (assessor has three years following assessment date to audit and revalue omitted personal property); General Statutes § 12-57 (a) (three years following tax due date to correct overvaluation of personal property); General Statutes § 12-60 (three years following tax due date to remedy clerical omissions or mistakes in assessment of taxes); General Statutes § 12-117 (a) (allowing for limited extension of time to complete assessor's duties, not to exceed one month). These statutes demonstrate that, when the legislature chooses to extend the assessor's statutory authority beyond the limits of § 12-55, it does so expressly. See, e.g., *Rutter* v. *Janis*, supra, 334 Conn. 734 ("legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so" (internal

Wilton Campus 1691, LLC *v.* Wilton

quotation marks omitted)). In the absence of such an expressed intent, the statutory period for the performance of the assessor's duties is governed by § 12-55 (b). See *Reconstruction Finance Corp.* v. *Naugatuck*, supra, 136 Conn. 31–32.

Section 12-63c (d) contains no such express extension of the assessor's statutory authority. In the absence of an express extension of the assessor's statutory authority, the deadline contained in § 12-55 (b) controls. We conclude that the deadline for imposing penalties under § 12-63c (d) must be the deadline articulated in § 12-55 (b)—i.e., the penalties must be imposed before the assessor signs the grand list for the applicable assessment year. This is the only reasonable interpretation of the term "assessment" in § 12-55 (b) because, if § 12-55 (b) does not include penalties imposed under § 12-63c (d), as the town contends, there would be no deadline for imposing these penalties. The town's interpretation would effectively give the assessor carte blanche to impose a penalty under § 12-63c (d) at any time after a taxpayer either files late or submits incomplete information. See General Statutes § 12-63c (d) ("[a]ny owner . . . who fails to submit such information as required . . . or who submits information in incomplete or false form . . . shall be subject to a penalty"). Such an interpretation would directly conflict with the statutory scheme as a whole, which we have interpreted as limiting the assessor's authority to the period before taking the oath and subscribing to the grand list, unless an extension of authority is expressly stated. We will not interpret a statute to create an absurd or unworkable result. See, e.g., *Tappin* v. *Homecomings Financial Network, Inc.*, 265 Conn. 741, 758–59, 830 A.2d 711 (2003). Therefore, we conclude that the term "assessment" in § 12-55 (b) must be read to include penalties imposed under § 12-63c (d). Because the statute, when read in context, has only one reasonable interpretation,

the statute is not ambiguous, and we therefore do not consider the town's arguments to the extent that they rely on legislative history or other extratextual sources.

The town also argues that, because § 12-55 (a)[9] specifically lists penalties imposed under different statutes (General Statutes §§ 12-41 and 12-57a) and does not list § 12-63c (d) penalties, the legislature also must not have intended that § 12-55 (b) include § 12-63c (d) penalties. In support of this argument, the town invokes the same canon of statutory construction we discussed in part I B of this opinion, expressio unius est exclusio alterius —"the expression of one thing is the exclusion of another." It is important to note, however, that the proposed uses of the canon are different in these different contexts. As the phrase, "the expression of one thing is the exclusion of another," was used in *Felician Sisters of St. Francis of Connecticut, Inc.* v. *Historic District Commission*, supra, 284 Conn. 851, we reasoned that, if the legislature had expressed two statutory exceptions to the general rule of § 12-63c (d) that the taxpayer "shall be subject to a penalty," it followed logically that "the expression of [two] thing[s] is the exclusion of [any other]," that is, the penalty was mandatory unless one of the two exceptions applied. (Internal quotation marks omitted.) *Felician Sisters of St. Francis of Connecticut, Inc.* v. *Historic District Commission*, supra, 851.

The canon is also employed to suggest that, when the legislature includes a group or a list of items in a statute,

---

[9] General Statutes § 12-55 (a) provides in relevant part: "On or before the thirty-first day of January of each year, except as otherwise specifically provided by law, the assessors or board of assessors shall publish the grand list for their respective towns. Each such grand list shall contain the assessed values of all property in the town, reflecting the statutory exemption or exemptions to which each property or property owner is entitled, and including, where applicable, any assessment penalty added in accordance with section 12-41 or 12-57a for the assessment year commencing on the October first immediately preceding. . . ."

Wilton Campus 1691, LLC *v.* Wilton

an item not included must have been deliberately excluded. See, e.g., *DeNunzio* v. *DeNunzio*, 320 Conn. 178, 194, 128 A.3d 901 (2016). We have noted generally about statutory canons, however, and specifically about expressio unius est exclusio alterius, that canons are "merely guides drawn from experience, to be employed or not to be employed carefully and judiciously, depending on the circumstances." *Burke* v. *Fleet National Bank*, 252 Conn. 1, 23, 742 A.2d 293 (1999). We agree with the Appellate Court that the existence of a list in § 12-55 (a) does not require us to read that list into the text of § 12-55 (b). The two subsections have different purposes. Subsection (a) of § 12-55 lists what must be included in the grand list when it is published whereas subsection (b) of § 12-55 describes actions the assessor must take prior to the date the grand list is signed. In other words, whereas § 12-55 (a) describes the grand list, § 12-55 (b) prescribes the limits of the assessor's statutory authority (subject to the limited extensions of authority discussed previously). Because these two subsections have different purposes, we do not find the canon of expressio unius est exclusio alterius sufficiently persuasive to overcome the more apt interpretation of § 12-55 (b) we are persuaded applies.[10]

_____

[10] Because we hold that the town's reliance on the list in § 12-55 (a) is misplaced, we specifically do not adopt the reasoning of the Appellate Court to the extent that it held that there was no "language, legislative history or statutory purpose suggesting" that it was appropriate to apply the canon of expressio unius est exclusio alterius to the text of § 12-55 (a). (Internal quotation marks omitted.) *Wilton Campus 1691*, *LLC* v. *Wilton*, supra, 191 Conn. App. 729. Similarly, because we hold that the statute's plain meaning is unambiguous, we do not consider whether the maxim that this court resolves any ambiguities in our taxing statutes in favor of the taxpayer applies to penalties and is not instead confined to statutes that impose taxes. See *Key Air*, *Inc.* v. *Commissioner of Revenue Services*, 294 Conn. 225, 241, 983 A.2d 1 (2009) (presumption of strict construction in favor of taxpayer does not apply when statute is not ambiguous); *Consolidated Diesel Electric Corp.* v. *Stamford*, 156 Conn. 33, 36, 238 A.2d 410 (1968) ("[w]hen a taxing statute is being considered, ambiguities are resolved in favor of the taxpayer").

Wilton Campus 1691, LLC *v.* Wilton

The town argues that we should nonetheless apply the canon because January 31 is both the date of publication of the grand list and the date by which an assessor must swear the oath on the grand list pursuant to § 12-55 (a). The town argues that it logically follows that the timing in subsection (b) is relevant only for those items that must be included in the grand list pursuant to subsection (a). We disagree. The fact that both subsections share a common deadline does not compel the conclusion that the two subsections must refer to identical items. Such a conclusion would render the distinct language of § 12-55 (b) superfluous. See, e.g., *Lopa* v. *Brinker International, Inc.*, 296 Conn. 426, 433, 994 A.2d 1265 (2010) ("[b]ecause [e]very word and phrase [of a statute] is presumed to have meaning . . . [a statute] must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant" (internal quotation marks omitted)).

II

Having determined that the assessor did not have the statutory authority under § 12-55 (b) to impose the late filing penalties after signing the grand list, we still must decide whether the assessor had authority to impose the penalties under § 12-60,[11] which provides for a limited extension of authority for the sole purpose of correcting "clerical omission[s] or mistake[s]."[12] Section 12-60 provides in relevant part: "Any clerical omission or mistake in the assessment of taxes may be corrected according to the fact by the assessors or board of assessment appeals, not later than three years following the tax due date relative to which such omission or mistake occurred, and the tax shall be levied and collected according to such corrected assessment. . . ."

[11] See footnote 5 of this opinion.

[12] In the interest of brevity, we refer to the decision not to impose the penalty before signing the grand list as a "mistake."

Wilton Campus 1691, LLC *v.* Wilton

The following additional facts and procedural history are necessary to our review of this issue. The town concedes that the assessor intentionally did not impose the penalties until after signing the grand list and that it was the assessor's long-standing practice to impose § 12-63c (d) penalties after signing the grand list pursuant to § 12-60. The town argues, however, that any mistake was nonetheless a "clerical mistake" because it concerned the administrative procedure or method chosen to impose the penalties. Such a mistake, the town argues, is not substantive because it does not relate to the amount or propriety of the assessment.

The trial court agreed with the plaintiffs that the assessor in this case was not authorized under § 12-60 to impose the penalties after signing the grand list because § 12-60 applies only when there is a clerical omission or mistake, not when, as here, the assessor *intentionally* delays imposing the penalties. The Appellate Court agreed. See *Wilton Campus 1691, LLC* v. *Wilton*, supra, 191 Conn. App. 731. The Appellate Court noted that this court previously has interpreted "clerical omission or mistake" as distinct from intentional actions and "errors of substance, of judgment, or of law." (Internal quotation marks omitted.) Id., 732; see *Reconstruction Finance Corp.* v. *Naugatuck*, supra, 136 Conn. 31–32; see also *National CSS, Inc.* v. *Stamford*, supra, 195 Conn. 596 ("[when] an error is of a deliberate nature such that the party making it at the time actually intended the result that occurred, it cannot be said to be clerical . . . [b]ecause the plaintiff's action . . . although mistaken, was deliberate and intentional, [and thus] it is not clerical, but can only be characterized as an error of substance" (citation omitted)). In light of these decisions, the Appellate Court concluded that, "because the assessor's omission of the late filing penalties at issue from the 2014 grand list at the time he signed it was of a deliberate nature such that [the assessor]

at the time actually intended the results that occurred, it cannot be said to be clerical. . . . Because such omission, although mistaken, was deliberate and intentional, it is not clerical, but can only be characterized as an error of substance. . . . Accordingly, § 12-60 does not apply.'' (Citations omitted; internal quotation marks omitted.) *Wilton Campus 1691, LLC* v. *Wilton*, supra, 734.

For slightly different reasons, we agree that the assessor's intentional delay in imposing the penalties was not a clerical omission or mistake and that § 12-60 therefore does not apply. As a preliminary matter, we note that we have interpreted ''clerical'' to modify both ''omission'' and ''mistake'' within the meaning of § 12-60. See *Bridgeport Brass Co.* v. *Drew*, 102 Conn. 206, 212, 128 A. 413 (1925). Here, we need not decide whether the decision to impose the penalties after signing the grand list is best described as a mistake or as an omission; under our case law, whether the decision was ''clerical'' resolves the issue. Specifically, when the mistake consists of a deliberate action taken to effect a particular intended result, our cases make clear that the mistake cannot be clerical. See, e.g., *Reconstruction Finance Corp.* v. *Naugatuck*, supra, 136 Conn. 31–32; see also *National CSS, Inc.* v. *Stamford*, supra, 195 Conn. 596. *Reconstruction Finance Corp.* and *National CSS, Inc.*, both involved mistakes pertaining to the substance of the assessment, but our reasoning in these cases did not depend on that fact. See *Reconstruction Finance Corp.* v. *Naugatuck*, supra, 31–32 (borough's imposition of tax it was not entitled to impose was not clerical omission or mistake); *National CSS, Inc.* v. *Stamford*, supra, 589, 596 (property owner's intentional listing of personal property that was not, in fact, subject to taxation was not clerical omission or mistake). Under our case law, which the legislature has not seen fit to dis-

turb, § 12-60 is not available to remedy "errors of substance, of judgment, or of law." (Internal quotation marks omitted.) *Reconstruction Finance Corp.* v. *Naugatuck*, supra, 32; see also *National CSS, Inc.* v. *Stamford*, supra, 596. Here, we also need not decide whether the assessor's action was one of substance because the assessor's intentional decision to wait to impose the penalties for months after signing the grand list when the assessor had no authority to do so was certainly an error of judgment or of law. Under our case law, the assessor's mistake was therefore not a clerical mistake within the meaning of § 12-60.

Because we hold that the penalties imposed under § 12-63c (d) were "assessment[s] . . . required by law" within the meaning of § 12-55 (b), the assessor did not have the statutory authority to impose the penalties after taking the oath and subscribing to the 2014 grand list. And, because the assessor's decision to omit the penalties was deliberate and intentional, the assessor also lacked authority to impose the penalties under § 12-60. Penalties imposed without statutory authority are invalid, and, therefore, the town may not collect the penalties at issue in this case. See, e.g., *Empire Estates, Inc.* v. *Stamford*, supra, 147 Conn. 264 ("[m]unicipalities have no powers of taxation other than those specifically given by statute").

The judgment of the Appellate Court is affirmed.

In this opinion McDONALD, MULLINS, KAHN, ECKER and KELLER, Js., concurred.

ROBINSON, C. J., concurring in part and dissenting in part. I respectfully disagree with part II of the majority opinion, in which the majority concludes that a municipal assessor's untimely filing of statutory penalties under

Wilton Campus 1691, LLC *v.* Wilton

General Statutes § 12-63c (d)[1] was not a clerical error
subject to correction under General Statutes § 12-60.[2]
Given this conclusion, the majority affirms the judg-
ment of the Appellate Court, which reversed the judg-
ment of the trial court and directed it to sustain the tax
appeals filed by the plaintiffs, Wilton Campus 1691, LLC,

[1] General Statutes § 12-63c (d) provides: "Any owner of such real property
required to submit information to the assessor in accordance with subsection
(a) of this section for any assessment year, who fails to submit such informa-
tion as required under said subsection (a) or who submits information in
incomplete or false form with intent to defraud, shall be subject to a penalty
equal to a ten per cent increase in the assessed value of such property for
such assessment year. Notwithstanding the provisions of this subsection,
an assessor or board of assessment appeals shall waive such penalty if the
owner of the real property required to submit the information is not the
owner of such property on the assessment date for the grand list to which
such penalty is added. Such assessor or board may waive such penalty upon
receipt of such information in any town in which the legislative body adopts
an ordinance allowing for such a waiver."

[2] General Statutes § 12-60 provides: "Any clerical omission or mistake in
the assessment of taxes may be corrected according to the fact by the
assessors or board of assessment appeals, not later than three years follow-
ing the tax due date relative to which such omission or mistake occurred,
and the tax shall be levied and collected according to such corrected assess-
ment. In the event that the issuance of a certificate of correction results in
an increase to the assessment list of any person, written notice of such
increase shall be sent to such person's last-known address by the assessor
or board of assessment appeals within ten days immediately following the
date such correction is made. Such notice shall include, with respect to
each assessment list corrected, the assessment prior to and after such
increase and the reason for such increase. Any person claiming to be
aggrieved by the action of the assessor under this section may appeal the
doings of the assessor to the board of assessment appeals as otherwise
provided in this chapter, provided such appeal shall be extended in time to
the next succeeding board of assessment appeals if the meetings of such
board for the grand list have passed. Any person intending to so appeal to
the board of assessment appeals may indicate that taxes paid by him for
any additional assessment added in accordance with this section, during
the pendency of such appeal, are paid 'under protest' and thereupon such
person shall not be liable for any interest on the taxes based upon such
additional assessment, provided (1) such person shall have paid not less
than seventy-five per cent of the amount of such taxes within the time
specified or (2) the board of assessment appeals reduces valuation or
removes items of property from the list of such person so that there is no
tax liability related to additional assessment."

Wilton Campus 1691, LLC *v.* Wilton

Wilton River Park 1688, LLC, and Wilton River Park North, LLC, from the penalties imposed by the municipal assessor for the defendant, the town of Wilton, pursuant to § 12-63c (d). See *Wilton Campus 1691, LLC* v. *Wilton*, 191 Conn. App. 712, 731, 736, 216 A.3d 653 (2019). Given the distinction between clerical errors and errors of substance elucidated in case law from this court and sister state courts, I conclude that the assessor's delay in imposing the penalties under § 12-63c (d) was a clerical error for purposes of § 12-60, thus allowing him to correct it beyond the time limitation set forth in General Statutes § 12-55 (b).[3] Because I would reverse the judgment of the Appellate Court, I respectfully dissent in part.

I begin by noting my agreement with the facts and procedural history recited in the majority opinion. I also agree with part I of the majority opinion, in which the majority concludes that the penalties imposed under § 12-63c (d) are " 'assessment[s] . . . required by law' " within the meaning of § 12-55 (b). Part I of the majority opinion. I part company with the majority insofar as it concludes that the assessor did not have authority under § 12-60 to correct the grand list to reflect the imposition of the penalties because the assessor intentionally delayed imposing the penalties, which rendered his mistake substantive rather than clerical.

As the majority notes, whether the assessor's mistake is a clerical error for purposes of § 12-60 presents an issue of statutory construction, which is a question of law over which we exercise plenary review. See, e.g., *Boisvert* v. *Gavis*, 332 Conn. 115, 141, 210 A.3d 1 (2019). It is well settled that we follow the plain meaning rule pursuant to General Statutes § 1-2z in construing stat-

---

[3] General Statutes § 12-55 (b) provides in relevant part: "Prior to taking and subscribing to the oath upon the grand list, the assessor or board of assessors shall equalize the assessments of property in the town, if necessary, and make any assessment omitted by mistake or required by law. . . ."

utes "to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *Sena* v. *American Medical Response of Connecticut, Inc.*, 333 Conn. 30, 45, 213 A.3d 1110 (2019); see id., 45–46 (setting forth plain meaning rule). Beginning with the text, § 12-60 provides in relevant part: "Any clerical omission or mistake in the assessment of taxes may be corrected according to the fact by the assessors or board of assessment appeals, not later than three years following the tax due date relative to which such omission or mistake occurred, and the tax shall be levied and collected according to such corrected assessment. . . ."

In determining whether the assessor's action in this case was "clerical" for purposes of § 12-60, we do not write on a blank slate. See, e.g., *Commissioner of Emergency Services & Public Protection* v. *Freedom of Information Commission*, 330 Conn. 372, 384, 194 A.3d 759 (2018). As the majority observes, this court has considered the scope of § 12-60 in two venerable cases, *Reconstruction Finance Corp.* v. *Naugatuck*, 136 Conn. 29, 68 A.2d 161 (1949), and *National CSS, Inc.* v. *Stamford*, 195 Conn. 587, 489 A.2d 1034 (1985), which I read to hold that an error is not clerical when it pertains to the substance or subject of the assessment. For example, in *Reconstruction Finance Corp.*, this court concluded that an assessor's error as to which personal property owned by a taxpayer was subject to taxation was more than a clerical error because "it concerned the very substance and extent of the assessment." *Reconstruction Finance Corp.* v. *Naugatuck*, supra, 32. Similarly, in *National CSS, Inc.* v. *Stamford*, supra, 589–90, this court considered an instance in which a taxpayer came to realize that it was not actually required to pay personal property taxes on computer equipment after it had paid such taxes. There, this court held that the taxpayer's mistake was not clerical in nature because,

"although mistaken, [it] was deliberate and intentional
. . . not clerical, [and could] only be characterized as
an error of *substance*." (Emphasis added.) Id., 596.

I respectfully disagree with the majority's conclusion
that *National CSS, Inc.*, and *Reconstruction Finance
Corp.* control the present case. Neither contains a con-
struction of the statute that limits the definition of cleri-
cal error as to exclude mistakes made during the
execution of ministerial duties, such as filing an assess-
ment. Both cases are distinguishable from the present
case because they implicated situations in which the
substance of the assessment—indeed, *its very sub-
ject*—was the subject of the mistake. This distinction
is consistent with decisions of sister state courts con-
struing similar statutes, which demonstrate that the
subject of the mistake is a significant consideration in
determining if an error is clerical or one of substance.[4]
See *American Legion, Hanford Post 5* v. *Cedar Rapids
Board of Review*, 646 N.W.2d 433, 439 (Iowa 2002) (mis-
take of writing or copying is clerical whereas mistake
of law or judgment in assessing property is error of

---

[4] I also find instructive a line of cases from this court distinguishing
between judicial errors and clerical errors in guiding our determination of
whether an assessor's error is clerical or one of substance for purposes of
§ 12-60. We have held that filing mistakes that cause the judgment file to be
inconsistent with the decision rendered are clerical rather than substantive
errors. See *Brown* v. *Clark*, 81 Conn. 562, 569, 71 A. 727 (1909) (failing to
properly include interest for certain period in filing judgment was clerical
mistake and not judicial error). Similarly, when a court seeks to correct a
phrasing mistake that does not affect the substance of the judgment itself,
this court has held that such a change is not substantive in nature. See
*Blake* v. *Blake*, 211 Conn. 485, 495–96, 560 A.2d 396 (1989) (trial court's
changed characterization of judgment was not substantive change). When
the court seeks to correct a mistake by altering the contents of the judgment
itself, however, it makes a substantive rather than a clerical change. See
*Morici* v. *Jarvie*, 137 Conn. 97, 104–105, 75 A.2d 47 (1950) (modification to
foreclosure judgment sought to correct error of substance because it altered
details of judgment); *Goldreyer* v. *Cronan*, 76 Conn. 113, 117–18, 55 A. 594
(1903) (failure to include interest in judgment as rendered, rather than as
recorded, was error of substance).

substance); *Bridgewater Interiors* v. *Detroit*, Docket No. 241136, 2003 WL 22796986, *2 (Mich. App. November 25, 2003) (definition of clerical error was not restricted to only typographical errors, but does not include assessor's substantive decision after considering all relevant facts); *Collin County Appraisal District* v. *Northeast Dallas Associates*, 855 S.W.2d 843, 846–47 (Tex. App. 1993) (Texas property tax code defines clerical error as "an error . . . that is or results from a mistake or failure in writing, copying, transcribing, entering or retrieving computer data, computing, or calculating . . . [but] does not include an error that is or results from a mistake in judgment or reasoning in the making of the finding or determination" (internal quotation marks omitted)); *Commonwealth* v. *Richmond-Petersburg Bus Lines, Inc.*, 204 Va. 606, 610, 132 S.E.2d 728 (1963) (clerical errors usually involve mistake by clerk or agent that does not require judicial consideration or discretion); *Meckem* v. *Carter*, 323 P.3d 637, 643 (Wyo. 2014) ("[a] clerical error is a mistake or omission of a mechanical nature that prevents the judgment as entered from accurately reflecting the judgment that was rendered" (internal quotation marks omitted)). But see *St. Catherine Hospital* v. *Roop*, 34 Kan. App. 2d 638, 639–40, 645, 122 P.3d 414 (2005) (assessor's mistaken guess of building materials when evaluating property was clerical error).

In the present case, the Wilton assessor mistakenly delayed imposing the penalties until after the signing of the grand list. The majority agrees with the Appellate Court's conclusion that, "because the assessor's omission of the late filing penalties at issue from the 2014 grand list at the time he signed it was of a deliberate nature such that [the assessor] at the time actually intended the results that occurred, it cannot be said to be clerical." (Internal quotation marks omitted.) Part II of the majority opinion, quoting *Wilton Campus 1691*,

*LLC* v. *Wilton*, supra, 191 Conn. App. 734. I, however, agree with the defendant that the assessor's mistake is not substantive because it does not relate to the amount or propriety of the assessment *itself*. Unlike the assessments at issue in *Reconstruction Finance Corp.* v. *Naugatuck*, supra, 136 Conn. 31, and *National CSS, Inc.* v. *Stamford*, supra, 195 Conn. 589–90, the assessor's mistake was deliberate only as to the time of filing, and it did not relate to the substance of the penalties or the ultimate outcome of the assessment. Because the assessor's mistake was limited to the ministerial task of filing the assessment and did not alter the content of the assessment, I conclude that it was a clerical error subject to correction under § 12-60 and not an error of substance. Accordingly, I conclude that the Appellate Court improperly reversed the trial court's judgment and sustained the plaintiffs' tax appeals on the ground that "§ 12-60 does not apply so as to permit the retroactive adjustment to the assessments on the basis of the late filing penalties." *Wilton Campus 1691, LLC* v. *Wilton*, supra, 734.

Because I would reverse the judgment of the Appellate Court, I respectfully dissent in part.

———————————————